DENNIS O. BYRNE *vs.* JOHN MCPHERSON, ADMINISTRATOR OF JOHN BRIEN, SURVIVING OBLIGEE OF JOHN MCPHERSON.—*December Term,* 1841.

Upon a judgment in favor of A and B, the counsel of the surviving plaintiff, A, ordered the clerk of the county court to issue a scire facias, directing it in writing in the name of the survivor. The writ in fact was issued in the name of both the original plaintiffs. Upon motion of the administrator of the survivor, who had become a party since the writ was sued forth, the court ordered a duplicate of the original scire facias which had been lost, to be made out and filed, and then ordered an amendment of the writ, so as to conform to the plaintiffs' original instructions. Affirmed upon appeal.

APPEAL from *Washington* county court.

This was a *scire facias* sued out on the 2nd December, 1833, reciting a judgment of November term, 1832, recovered by *John McPherson* and *John Brien*, against the appellant, for as well the sum of $742.37 debt, as the sum of $2,000 damages, &c., suggesting the death of *John McPherson*, and that execution in favor of *John Brien*, as surviving obligee of *John McPherson*, remains if, &c., returnable on the 4th Monday of March, 1834. This writ was returned, made known, and the appellant appeared. At November term, the death of *John Brien* was suggested, and the cause continued to make proper parties, and so the cause was continued from term to term, until November term, 1838, when *John W. McPherson*, administrator of *John Brien*, appeared to prosecute said writ, and filed in the county court the following statement and affidavit:

"In this case I distinctly recollect going into the clerk's office, at the request of, and in company with, *John Brien, senior*, and searching for and finding the original judgment and the proceedings thereon, of *John McPherson* and *John Brien* against *Dennis O. Byrne*, a short copy of which judgment is herewith exhibited. Upon which judgment he directed me to cause to be issued a *scire facias* to revive it, as *John McPherson* was then dead. I accordingly directed it, and taking the docket to the clerk, I directed him to enter on his new docket, and stood by and saw him do it, or did it myself, a *scire facias*, in the name of *John Brien*, the surviving partner, *John McPherson* being dead, and directed him to issue the writ. The clerk, or one of his deputies, had issued the writ in the name of both *John Brien* and *John McPherson*, as though they were both alive. I afterwards moved to amend the writ, and it has been continued under that motion ever since. I further state that the sole object I had in view at that time was to cause to be issued a proper writ of *scire facias*, in the name of *John Brien*, as survivor of *John McPherson*, *deceased*, to revive the judgment for the use of said *John Brien*, and his son *John McPherson Brien*, but in the execution of that object

I think I directed the docket entry to be made precisely as it was made on the rough original.

JOSEPH I. MERRICK."

"*William Smith*, one of the clerks in the office of the clerk for *Washington* county court, being duly sworn here in open court, deposeth and saith, that the *scire facias* numbered 15, on the appearance docket of *March* court, 1834, was docketed by *Joseph I. Merrick*, Esq., an attorney of said court, in his own proper hand writing, as follows:

"*John Brien*, surviving partner of *John McPherson*, use of *John Brien* and *John McPherson Brien vs. Dennis O. Byrne.*

*Scire facias* to revive judgment, and the following letters and figures in the hand writing of *O. H. Williams*, clerk of said court, viz: D. $742.37, $2,000 Damages, Costs $9.59. No. 275, N. C. 1822."

"That in pursuance of said entry there was issued a *scire facias*. And upon the docket it further appears that said *scire facias* was returned by *William H. Fitzhugh*, the then sheriff, "made known," at March court, 1834, and filed among the records of said court; that he has, at several times, made diligent search for said *scire facias* among the papers of the office of the clerk for the county, and has been unable to find them; that from the best of his recollection, the last he knew of said papers was, that they were in the possession of the said *Joseph I. Merrick*, since which time he has not seen, or been able to trace said papers further."

In *Washington* county court, November term, 1838. On the aforegoing statement of facts, it is, on motion of the plaintiff by his counsel, ruled by the court, that the clerk of this court make out and file in this case as a part of the proceedings thereof, a *scire facias* on the original judgment of this court, rendered at the November term, 1822, in favor of *John McPherson* and *John Brien* against *Dennis O. Byrne*, for $742.37 debt, and $2,000 damages and costs; the said *scire facias* to be in the name of the said *John Brien* and *John McPherson*, dated on the 2nd day of December, 1833, with the return of

the sheriff of "made known," regularly endorsed thereon, in due form of such return ; and that the said *scire facias* and return be filed, *nunc pro tunc*, or as if the proper and respective dates at which said *scire facias* was issued, and said return of the sheriff was made, and that the said cause be considered as now standing in the same condition, and proceed in the same manner, as if said original *scire facias* and return thereto had not been lost or mislaid, unless cause to the contrary be shewn by the defendant by ten o'clock on Monday morning next.

And on the aforegoing statement of facts, and on further motion of the plaintiff by his counsel, it is further ordered by the court, that the clerk of this court, after he has made out and filed the *scire facias*, and sheriff's return thereto as aforesaid, amend the same so as to make it a *scire facias* in the name of *John Brien*, as surviving obligee of *John McPherson*, deceased, on the original judgment of this court, rendered November term, 1822, in favor of *John McPherson* and *John Brien* against *Dennis O. Byrne*, for $742.37 debt, and $2,000 damages and costs, unless cause to the contrary be shewn by the defendant by ten o'clock on Monday morning next.

These rules were afterwards made absolute. Thereupon further proceedings in the premises were continued, and the rule aforesaid enlarged, by regular continuances from term to term of the said court, from the said third Monday of November, 1838, until the fourth day of December, 1840.

Whereupon it is ordered by the court here, that the clerk of this court make out and file in this case, as a part of the proceedings thereof, a *scire facias* on the original judgment of this court, rendered at the November term, 1832, in favor of *John McPherson* and *John Brien*, against *Dennis O. Byrne*, for $742.37 debt, and $2,000 damages and costs ; the said *scire facias* to be in the name of the said *John Brien* and *John McPherson*, dated on the second day of December, 1833, with the return of the sheriff of "made known," regularly endorsed thereon in due form of such return.

Which said *scire facias* is in the words and figures follow-
ing, to wit:

"WASHINGTON COUNTY, *to wit: The State of Maryland to
the Sheriff of Washington County, greeting:* Whereas, at," &c.

It was also agreed, that this case shall be considered in the
Court of Appeals, in the same manner as if a bill of exceptions
had been taken to the direction of the court to the clerk, to sup-
ply the lost *scire facias*, and a separate bill of exceptions had
been taken to the amendment allowed by the court to the writ
so supplied.

The county court (SHRIVER and T. BUCHANAN, A. J.,) then
ordered a *fiat*, according to the tenor of the amended *scire facias*,
and the defendant appealed.

The cause was submitted upon written arguments to BUCH-
ANAN, C. J., STEPHEN, ARCHER, CHAMBERS and SPENCE, J.

By PRICE, for the appellant.

The facts to be collected from this record are these: *John
Brien* and *John McPherson* recovered a judgment in debt on a
single bill against *Dennis O. Byrne*, at November term 1822 of
*Washington* county court. After the death of *McPherson*,
*Brien*, the surviving plaintiff in the judgment, issued a *scire
facias* to revive it, on the 2nd day of December, 1833. *Mr.
Merrick*, the counsel of *Brien* states, that he directed the clerk
to issue the *scire facias* in the name of *John Brien, surviving
partner, John McPherson* being dead. That he either made
the entry to this effect on the docket, or stood by and saw the
clerk do it. The docket entry, which is proved by *Mr. Smith*
to be in the hand writing of *Mr. Merrick*, is, "*John Brien,
surviving partner* of *John McPherson*, use of *John Brien* and
*John McPherson Brien vs. Dennis O. Byrne.*" *Mr. Merrick*
further states, that afterwards at the trial term, upon exami-
ning the writ, he found that it had been issued in the names
of both *John Brien* and *John McPherson*, as if both were still
alive.

The *scire facias* was returned "made known," to March

v. 12

term, 1834, and filed among the papers in the clerk's office. *Mr. Smith* proves that the papers were afterwards lost or mislaid, and that when he last saw them they were in the hands of the plaintiff's attorney.

The cause was continued from term to term until November court 1838, when the plaintiff, upon the above facts, obtained a rule upon the defendant to shew cause, and upon the hearing of that rule at November term 1840, the court ordered, that the clerk make out and file in this case as a part of the proceedings thereof, a *scire facias* on the judgment of 1822 in favor of *John McPherson* and *John Brien*, against *Dennis O. Byrne* for $742.37 debt, and $2000 damages and costs; the said *scire facias* to be in the name of the said *John Brien* and *John McPherson*, dated on the 2nd of December, 1833, with the return of the sheriff of "made known" regularly endorsed thereon, in due form of such return.

This is the only order the court passed after the cause was shewn. They merely ordered the lost writ and return to be supplied by the clerk, and he has done so. The court ordered no amendment of the restored *scire facias*, and yet we find an amended writ, placed in front of this record and framed by the clerk in all respects to suit the plaintiff's case.

It is true that the agreement of counsel at the close of the record, carries with it the strong implication, that the parties supposed the court had passed some such order of amendment. But whatever counsel may have supposed, it does not appear in point of fact that any such order was passed, and therefore the amended *scire facias* is in this record without any authority.

This court will not, it is admitted, remand the cause for diminution, as the only ground for that course would be to give the court below an opportunity to do that, which they have not done. The appellant comes before this tribunal asking them to consider what the county court have actually done, not what they might have done. But in addition to this view, this court will not remand the record, for a much stronger reason, namely, that the court below have no power, or if they possess the power, it is inexpedient that they should exercise it, in allowing the amendment in question.

It is proper therefore to consider what the law is in reference to the power of the courts in allowing amendments. It is settled in *England*, that whilst the pleadings are *in paper* and before they are *entered of record*, the court will amend the declaration, plea, replication, &c., in form or substance, on proper and equitable terms. 2 *Tidd's Pr.* 753. Whilst the proceedings are *in paper*, the amendment is at common law, and not within any of the statutes of amendment, which relate only to proceedings of record. *Tidd*, 767. A cause is said to be *in paper* until judgment is signed, up to which period either party is in general at liberty to amend his pleadings as at common law. *Step. on Pl.* 105, 106. And even after judgment is signed, and up to the latest period of the action, amendment is in most cases allowable at the discretion of the court, *under certain statutes* passed for allowing amendments *of the record*. *Step. on Pl.* 106.

The *English* statutes of amendment, relating as they do exclusively *to the record after judgment is signed*, are out of this case.

The acts of this State of 1785, chap. 80, sec. 4, and of 1809, chap. 153, sec. 1, which authorise the courts to allow amendments in all proceedings whatsoever before verdict, have been interpreted to mean all proceedings in a cause subsequent to the return of the writ, and not as authorising an amendment of the writ itself. *Stoddert vs. Newman*, 7 *Harr. & John.* 256, 257. And in *Glenn, trustee of Fahnestock vs. Karthaus*, 4 *Gill. & John.* 381, the principle is referred to as having been frequently decided by this court, that an amendment of the writ is what the courts below are not authorized to permit. The legislation in this State, is therefore also out of the question in the case now before the court.

It was for a long time regarded as settled law in *England*, that a *scire facias* was not amendable. *Tidd's Pr.* 1176, and the authorities their cited, particularly 1 *Salk.* 52. 1 *Str.* 401. 2 *Str.* 892, 1165. *Barnes' Notes*, 26, 27, 114, 115. But it should seem that the court have the power of amending a *scire facias* for any misprision of the clerks, by construction of the

*Stat.* 8, *Hen.* 6, *chap.* 12, that statute expressly including "writs" generally. 2 *Archb. Civ. Pr.* 277. The power to amend therefore in this case must be found in the statute referred to, and the construction given to it by the courts, or such power does not exist.

The *Stat.* 8, *Hen.* 6, *chap.* 12, will be found upon examination to have relation, like the other statutes of amendment in *England,* to the record after judgment signed. The substance of that statute is simply, that no judgment nor record shall be reversed nor avoided for rasures, interlineations or literal errors in any record, process, warrant of attorney, original writ, or judicial panel, or return, but the judges may reform all defects in records by misprision of the clerks in affirmance of the judgment. It is not perceived how a warrant to amend a writ before judgment signed, should be found in this statute.

In *Buxom vs. Haskins,* 6 *Mod.* 263, the case was a *scire facias* to have execution, reciting a judgment of two messuages, whereas the judgment was in truth of but one messuage. Motion to amend. *Holt, C. J.* said, there was a difference where the writ is bad on the face of it; and where it is good in the frame of it, but not fitted to the particular case. And all the cases put of amendment, are of the first kind. And the motion was denied. Again, in *Williams vs. Haskins,* 6 *Mod.* 310, there was a *scire facias* to have execution of two messuages, and the judgment when produced was of but one messuage. Motion to amend. *Per Cur.* It cannot be, for this is a good writ for any thing that does appear on the face of it. And for that if there were a judgment for one messuage, this writ would be a good writ to revive. So being good in itself, though not apposite to this purpose, to amend would be to make a new writ, or to alter a good writ and fit it to another purpose. In *Vavaser vs. Baile,* 1 *Salk.* 52, *scire facias* on a judgment and by mistake in the *scire facias,* the plaintiff's name was put for the defendant's, viz: *Rodolphus* for *Jacobus,* and they moved to amend, it being the fault of the clerk. Denied. For the writ does not appear to us to be wrong, and there may be such a judgment for aught we know.

Now what is the proposed amendment here? The suit was brought in the names of two plaintiffs, and the effort was made to change it by amendment into a suit by one plaintiff only. The writ, in the language of *Lord Holt*, was a good writ for any thing that appeared on the face of it. So being good in itself, though not apposite to the plaintiff's case, to amend would be to make a new writ, or to alter a good writ and fit it to a different case.

The statute was made to cure defects in the writ, and not to help out the evidence adduced by the party to support his case. The writ of *scire facias* is placed by the statute in the same category with other writs. Now in cases of contracts, if too many persons be made plaintiffs the action will fail. 1 *Chit. Pl.* 8. So where one or more of several obligees, covenantees, partners or others, having a joint legal interest in the contract, dies, the action must be brought in the name of the survivor. 1 *Chit. Pl.* 11. Again, to strike out a party where there are too many in the writ, implies the same power of amendment, as to add a party where there are too few. And yet in all cases of contracts, if it appear upon the face of the pleadings that there are other obligees, covenantees or parties to the contract, who ought to be, but are not joined in the action, it is fatal on demurrer, or on motion in arrest of judgment, or on error. And if the objection do not appear on the face of the pleadings, the defendant may avail himself of it by plea in abatement, or as ground of non-suit at the trial upon the plea of the general issue. 1 *Chit. Pl.* 7, 8. A party making a mistake in any of these instances in the frame of his suit, is non-suited and submits. Such a thing as changing the form of his writ by amendment was never heard of. Now as the authority to amend a *scire facias* is derived from the *Stat.* 8, *Hen.* 6, *chap.* 12, and from that statute, because this writ is included in the general term "writs," it is difficult to conceive any reason for the amendment of a *scire facias* which would not equally apply to the amendment of the writ in any other action. And if it be settled law, that too many, or too few persons being made plaintiffs in any other suit *ex contractu*, is

fatal to the action, it is not easily comprehended why the same mistake in suing out a *scire facias* should not be attended with the same result.   It does not alter the case that *John McPherson* was dead.   This could only appear by the evidence at the trial.   The writ was good, but the evidence did not conform to it.

The courts have never gone further, it is believed, in the amendment of a *capias ad respondendum* than to allow a mistake in the christain or surname of a party to be corrected.   But this is done under an equitable construction of the *Stat.* 16 *and* 17, *Car.* 2 *c.* 8, called by *Twisden* the omnipotent act, which in its very terms has reference only to cases after verdict.   It enacts in substance, that no judgment upon any verdict of twelve men, shall be stayed or reversed for default in form, or for lack of form, &c., or for or by reason of the mistaking of the christian or surname of the plaintiff or defendant, &c., where the right name is at once truly alleged.

It is manifest from the reading of this statute, that it has reference to the names of those who are already parties to the suit, and to the correction of those names when incorrectly given, and that it never could be meant to authorise the striking out a name where there are too many, or the inserting a name where there are too few.

It may be urged that here was something to amend by ; but this fact confers no power on the court.   The proposition is not true, that the court will amend, whenever there is something to amend by, for that would make the power of amendment unlimited.   The rule is, that the court will amend, within the scope of their authority to do so, provided there be any thing to amend by ; otherwise they will not amend at all.   In this case the court had the docket entry to amend by—but that was wrong—being in the name of *John Brien, surviving partner.*   How surviving partner?   What reference can such a designation have to a surviving plaintiff in a judgment ?   It neither intimates nor implies that the death happened since the rendition of the original judgment.   Indeed it had no necessary connexion with a judgment at all.   It was necessary

therefore to correct it, but in doing so it was changed to *sur-viving obligee*, which was as far from right as the first. It ought to have been *surviving plaintiff*, or *survivor*.

F. A. SCHLEY, for the apppellee.

In this case a judgment was rendered in *Washington* county court at the November term, 1822, in favor of *John McPherson* and *John Brien* against *Dennis O. Byrne*, on a single bill, for $742.37 debt, and $2,000 damages and costs. *John McPherson* having died, *John Brien*, as the surviving obligee, required *Mr. Merrick*, as his counsel, to have the judgment revived by *scire facias* in his name, and went with his counsel to the clerk's office for that purpose. The counsel searched for and found the original judgment, and directed the clerk to issue a *scire facias* on that judgment, for the purpose of reviving it, as *John McPherson* was dead. The counsel then entered on the rough original docket, the titling of the case. After doing this, the clerk added to the titling a reference to the amount of the judgment, to wit: "D. $742.37, and $2,000 damages, costs $9.59." As also the number of the case on the docket, and the term of the court at which the judgment was rendered. Thus—"No. 275, N. C. 1822." The instructions being thus given, and the necessary memoranda thus made by the clerk to guide him in the issue of the writ, the clerk, or one of his deputies proceeded to issue the same. In doing this, an error was committed by issuing in the names of both the plaintiffs in the original judgment, instead of issuing in the name of *John Brien*, as the survivor. When the attorney, at the trial court, discovered this error, he moved to amend the writ, so as to make it in the name of *John Brien*, as the survivor. After the case had been continued for some time, the original *scire facias* with the sheriff's return thereon, were lost or mislaid, and the case was then continued for a considerable time under the expectation that the lost papers would be found. In the mean time *John Brien* died, and *John McPherson, junior*, having taken out letters of administration on his estate, *Brien's* death was suggested, and his administrator appeared to the suit, and

then laid the defendant under a rule to shew cause why the lost papers should not be supplied by exact copies, to stand in the place and stead of, and as the originals; as also to shew cause why, when the originals were thus supplied, the writ of *scire facias* should not be so amended as to make it conformable to, and a proper writ on the original judgment for the purpose of reviving it in the name of *John Brien* as surviving obligee of *John McPherson.* The court made the rule absolute, and gave judgment of *fiat* in the name of *John McPherson,* as the administrator of *John Brien,* surviving obligee of *John McPherson,* deceased, for the amount of the orignal judgment.

In this case it is manifest that the *scire facias* was issued, and intended to revive the original judgment in case No. 275 on the trial docket, at the November term of *Washington* county court 1822. That particular judgment was laid before the clerk by the attorney for the plaintiff, and the clerk was desired to issue the writ of *scire facias* on that judgment, and he made his memoranda accordingly.

It was therefore the duty of the clerk, with the judgment before him, to issue a proper *scire facias* to revive and give efficacy to that judgment. He ought to have issued a *scire facias* in the name of *John Brien,* as surviving obligee of *John McPherson,* deceased, instead of which he issued a *scire facias* in the names of both the plaintiffs, as if they were both still living. The attorney, who is also an officer of the court, intended that a proper *scire facias* should be issued on the judgment for the purpose of reviving it in the name of *John Brien,* as the surviving obligee. If therefore there was any error in his entry on the rough original, it was a mere error which the judgment itself, then before him, shewed of itself, and by which it might be amended or corrected.

Only two questions can arise in this case—

1st. Whether the original *scire facias* and sheriff's return thereon being lost, the court had the power, on being fully satisfied of their existence, contents and loss, of having that loss supplied by substituting copies as originals, and ordering them to be filed *nunc pro tunc?*

2nd. Whether the papers being thus restored and standing in the same plight and condition as the original *scire facias* and sheriff's return did at the time of their loss, the court could make the amendment that they have made?

The first question was waived before the court below on the part of the defendant's counsel, he considering the loss as a mere accident that might well occur under the practice of counsel, who frequently take out the original papers in a case to examine them, instead of getting copies, and thus saving expense to the parties. The loss or mislaying of the papers was not the fault of the party, but the act of the counsel, who is an officer of the court, and as such, took out the original *scire facias* and sheriff's return thereon. The counsel for the defendants below, therefore, did not make any objection to the substitution of the copies for the originals. But independent of such assent, the court would have the power on general principles, and in furtherance of justice, to supply any paper lost from the files of the court, when satisfied of the loss and contents of such paper. Indeed it would be hard if the court had no such power. If a bond, or deed, or will is lost, and the loss and contents of such paper can be proved, although the loss was by the act of the party claiming under either of such papers, yet the courts will enable the party to have the full benefit of such paper in the same manner as if the paper was still in existence and before the court. In this case a writ was issued by the proper officer of the court, and was served and returned by the sheriff to the court, and was fully in possession, and on the files of the court. It was afterwards either lost or mislaid by either the clerk or the attorney of the plaintiff, both being officers of the court. It would therefore seem to be essential to the clearest principles of justice, that the court should have such a control over their own records and papers as to protect suitors from loss from a mere accident of this kind. And that on being satisfied of the loss and contents of any paper that was regularly on the files of the court, they should have the power to supply its place, if by any means they can do so. In *Chicester & Van Wyck vs. Conde*, 3 *Cowen's*

*Rep.* 39, a record of a judgment to be confessed, with the power of attorney to confess the same according to the practice in *New York,* had been sent by the plaintiff's attorney by mail to the clerk's office at *Utica.* Supposing that it had reached *Utica* in time, the plaintiff's attorney caused a *fieri facias* to be issued, as though the judgment had been regularly entered at the time it ought to have been. The *fieri facias* was levied on the defendant's property, other *fieri facias*' on the judgments of other creditors were also levied on the property. It was afterwards discovered that the letter to *Utica* had gone on to the General Post Office as a dead letter, and long after was returned to the plaintiff's attorney, by which no judgment in fact had been entered up for the plaintiff on which he issued his *fieri facias.* On discovering this, the other creditors moved to set aside the *fieri facias* of the plaintiff, so that the money might be paid over to them, or their *fieri facias,* which had been regularly issued on judgments regularly obtained. The plaintiff's counsel then moved the court to allow him to amend by filing the warrant of attorney and record, *nunc pro tunc,* so as to sustain his *fieri facias,* and the court on full argument, allowed the plaintiff to do so, and gave him the full fruits of his *fieri facias.* And the court did it on the principle of furthering justice, and the power of the court, "where proceedings are conducted in good faith, to fill the chasms that may have intervened through accident or mistake."

This case, in principle, is quite as strong, indeed stronger, than the case under consideration. For in the case in *Cowen* a new judgment was not only entered up, but third parties were affected by it, whereas here, the defendant alone is to be affected. And he is seeking to get rid of the judgment, that he may plead the statute of limitations to a new writ of *scire facias ;* and therefore entitled to no favor. But it would seem to be unnecessary to multiply authorities on this point of the case, as this court has recently settled the law. I refer to the case of the *Bank of the United States vs. Lyles, et al,* 10 *Gill & John.* 326. In that case it was not perfectly certain, whether the *scire facias* had been issued and lost, or whether it

had ever issued. The clerk had been directed to issue it, and referred to the judgment on which it was to be issued. As no *scire facias* could be found, the court ordered a new *scire facias* to be issued, and the sheriff's return to be entered thereon. That is, the county court ordered a new *scire facias* to be issued "from the docket entries and other proceedings in the cause, which shall corectly recite the judgment sought to be revived, and purport to have been issued on the 24th of November, 1830." But the court overruled so much of the motion, as sought to have any entries made of a return of said writ by the sheriff, the court not finding that any return of any such writ was made by the sheriff. From this decision of the county court, both parties appealed. That is, the defendant appealed from the order directing a new writ to be made out, but the Court of Appeals sustained the judgment of the county court, ordering the new writ, and the amendment, so as to make it conform to the original judgment—and on the appeal of the plaintiff, from that part of the order refusing to direct the sheriff's return to be entered. The Court of Appeals reversed the decision of the county court and awarded a *procedendo*. If then the court in this case had the power to order a new writ to issue where none had issued, and to operate *nunc pro tunc, a multo fortiori*, would the court have power and a right to supply a writ that had actually issued, been served, and returned to be put on the files of the court. In the case now under consideration, there is no dispute as to the facts, that a writ was issued, served by the sheriff, returned to the court, and filed with the clerk. The *English* cases are numerous and direct to the point, that the court can supply a lost record or proceeding of any kind that was on their files.

In *Stone vs. Overton*, 2 *Barnes Notes* 9, a new record of *Ni. pri. and Ha. Cor. Jur.* was made out and returned by the associate, agreeably to his minutes taken at the trial, the old record having been lost.

In *Needham* and *Grane*, cited in 1*st Strange*, 140, on a loss of the roll by the attorney, leave was given to make out a new one. See *King qui tam vs. Bolton*, 1 *Strange*, 140. See also, *Evans vs. Thomas*, 2 *Strange*, 833.

In *Dayrell vs. Bridge,* 2 *Strange,* 1264, the *Postea* could not be found, and the court on debate ordered a new one to be made out from the record above and the associate's notes. See also *Bean vs. Elton,* 2 *Strange,* 1077.

The second question is in fact the only question in the case. Could the court under the circumstances order the amendment to be made, that was made?

The original judgment sought to be revived was in debt on a single bill in the names of *John McPherson* and *John Brien* against the defendant. *McPherson* having died, the object of *Brien* was to revive the judgment in his name, as the survivor or surviving obligee, and for this purpose he applied to his attorney. The attorney placed the judgment before the clerk and told him that he wished that judgment revived in the name of *Mr. Brien,* as the survivor. The attorney made an entry or titling on the rough original docket, in which he entered the name of *John Brien,* as surviving partner, instead of survivor simply, or surviving obligee, or surviving plaintiff. It was no part of the duty of the counsel to have made this or any other entry on the clerk's docket, although it was the mere rough original. He, however, laid the judgment itself before the clerk, and directed him to issue the *scire facias* to revive that judgment in the name of *John Brien,* the other plaintiff being dead. The clerk, as before stated, made his memoranda, referring with the utmost particularity to the judgment as the judgment, and the only judgment, on which the *scire facias* was to be issued. By mistake he issued in the names of both the plaintiffs instead of one only.

The amendment asked for is, to correct this mistake of the clerk, and to make the writ in form, such as it should have been under the facts stated to the clerk at the time he was requested to issue the writ. That is, he was told that *John McPherson,* one of the plaintiffs, was dead, and that *John Brien,* the survivor, who was then present in the clerk's office, wished the judgment revived in his name.

The appellee contends that, the clerk being thus informed of the facts, and requested to issue a *scire facias* to revive the

judgment, it was his duty to have issued a proper *scire facias* to effectuate the wish and intention of the plaintiff, and not having done so, it is a misprision on his part, which the court will correct by a proper amendment. And this the court can do under its general powers in furtherance of justice.

The *scire facias* is a writ that may be pleaded to, and the case was in progress to a judgment when the error was discovered, and the motion made for the amendment, it was therefore, fully within the power and control of the court. 7 *Term Rep.* 703. 2 *Arch. Prac.* 231. *Sweetland vs. Beazley,* 1 *Barnes' Notes,* 6.

It is also fully embraced by the statute of 8 *Hen.* 6, *chap.* 12, as that statute has been construed by the courts. Under that statute the court is not prohibited from correcting error or amending a writ, if applied to before judgment. The object of the statute was to give the court full power to amend the writ, process, &c., so that no judgment should be rendered by reason of such error. It could not have been intended that the court could not correct the misprision if pointed out before the judgment, and yet could correct it after the judgment. 2 *Arch. Prac.* 232. 5 *East.* 291. *Braswell vs. Jeco,* 9 *East.* 316.

A much greater latitude than formerly prevails in favor of amendments. 6 *Cowen,* 607. 2 *Burrow,* 756.

When the clerk has been guilty of making out an original, variant from the proecipe, the amendment should be on motion in the court where the writ is returnable. *Tidd's Prac.* 104.

In the case now under consideration, the plaintiff's attorney below furnished the clerk with directions or facts sufficient to enable him to issue the *scire facias* correctly. That is, he made the entry in the rough original in the name of *John Brien,* surviving partner of *John McPherson,* and at the same time laid the judgment before him, to revive which, he wished the writ to be issued. The clerk, however, did not conform to, or follow the titling so furnished on his rough original. He looked to the judgment alone, and issued in the names of both the plaintiffs, although the fact was before him that *John McPher-*

*son* was dead, and *John Brien* surviving. And the judgment showed that he ought to have issued in the name of *John Brien*, as the surviving party to the judgment, not the surviving partner, but the surviving obligee, or survivor, or surviving plaintiff. I care not which he styled him, as each was equally true, and would be supported by the judgment. Had the clerk issued the writ according to the entry made on the rough original docket by the plaintiff's attorney, the court would on motion have stricken out the words "partner of," it being a mere mistake of the attorney, who is an officer of the court, and which could have been amended by the judgment, so as to have left the *scire facias* in the name of "*John Brien*, surviving *John McPherson*." Here then, was sufficient to amend by—to wit, the entry on the docket and the judgment, both of which were placed before the clerk at the time he issued the *scire facias*. *Close vs. Gillespy*, 3. *John's Rep.* 527. *Cox vs. Mundy*, 1 *W. Black.* 492. 7 *Term. Rep.* 299. 1 *Term. Rep.* 782.

The case now under consideration is the case of a *scire facias* which the courts have the power to amend. 2 *Arch. Ci. Prac.* 244. *Tidd's Prac.* 1038, note (*d*). A *scire facias* on a judgment is a judicial writ. *Tidd's Prac.* 982. 2 *Bos. & Pul.* 275 *and note.* Judicial writs are more absolutely under the control of the court than original writs. *Campbell vs. Stiles*, 9 *Mass. Rep.* 218. *Burrell vs. Burrell*, 10 *Mass. Rep.* 222.

But it is said by the appellant's counsel, that although a *scire facias* may be amended, yet it can only be done under the 8 of *Hen.* 6, *chap.* 12, and therefore must be after judgment signed. The cases are otherwise.

In *Braswell vs. Jeco*, 9 *East.* 316, the court on motion ordered the two writs of *scire facias* and the declaration thereon to be amended so as to state the judgment and proceedings in the original action to have been against the defendant as a common person, and not as an attorney, conformably to the judgment roll of that original action.

In *Sweetland vs. Beasely & Brown*, 1 *Barnes' Notes*, 6, a *scire facias* against bail and all the proceedings thereon were

ordered to be amended by inserting the word merchant instead of *Mercer*, after issue joined on *nul tiel record.* See also *Clark vs. Cotten,* 1 *Barnes' Notes,* 3.

In the case in 10 *Gill & John.* 326, the court on motion and before judgment allowed the *scire facias* to be amended. The first *scire facias* recited the original judgment as recovered by the *President and Directors and Company of the Bank of the United States* against *Aquila Johns.* The amended *scire facias* recited the judgment as recovered by a certain *John Davidson,* administrator of *Uriah Forrest,* deceased, for the use of the President, &c. This case covers the whole ground.

If this amendment is not allowed and the appellee is driven to a new writ, he will lose his claim, as the defendant then can and will plead the statute of limitations.

Such a result the court will always endeavor to prevent. *Bearcroft vs. the Hundreds of Burnham and Stone,* 3 *Levinz,* 348.

Here there is sufficient to amend by. The docket entry shews that *John Brien* was the surviving party to the judgment, and the judgment shews that he was the surviving obligee in the single bill on which that judgment was rendered. As before remarked, it is immaterial when you have the fact which the docket entry gave, that he was the surviving party to that judgment, whether you style him surviving plaintiff, survivor, or surviving obligee ; the judgment recited equally sustaining each of those epithets ; and you may amend by either or both. 3 *Bibb,* 232.

CHAMBERS, J., delivered the opinion of this court.

The only question submitted to the court, is, whether under the circumstances of this case, the *scire facias* could properly be amended. In principle, this case cannot be distinguished in this respect from the case of *Prather's Terre Tenants vs. Manro,* 11 *Gill & John.* 261, in which the same question was adjudged. The argument in this case has only tended to strengthen the views there expressed, and we therefore

AFFIRM THE JUDGMENT.